POSTEMA v POSTEMA

Docket No. 115144. Submitted June 6, 1990, at Grand Rapids. Decided
    May 6, 1991, at 10:35 A.M.

    Kathryn L. Postema brought an action in the Kent Circuit Court,
seeking a divorce from Miles Postema. The court, George S.
Buth, J., entered a judgment of divorce which placed a present
value of $80,000 on a law degree obtained by the defendant
with support from the plaintiff during the marriage and, as
part of the division of the marital assets, awarded $32,000 to
the plaintiff as her share of the degree. The defendant ap-
pealed, and the plaintiff cross appealed.

    The Court of Appeals *held:*

    1. A postgraduate degree obtained by one spouse during the
marriage as the end product of a concerted family effort involv-
ing mutual sacrifice and effort gives rise, upon divorce, to a
divisible marital asset, subject to an equitable claim by the
other spouse for compensation for unrewarded sacrifices, ef-
forts, and contributions toward attainment of the degree.

    2. The valuation of an equitable claim to a postgraduate
degree involves a two-step analysis. First, the sacrifices, efforts,
and contributions of the spouse not earning the degree must be
examined. Second, in light of such sacrifices, efforts, and contri-
butions, a determination must be made with respect to the
most equitable remedy or means of compensating of the claim-
ant under the facts of a given case. Relevant considerations
include the length of the marriage after the degree was ob-
tained, the sources and extent of financial support given to the
degree holder during the years in school, and the overall
division of the parties' marital assets.

    3. The record is unclear with respect to how the trial court
determined its valuation of the degree and the award to the
plaintiff for her share of that degree, requiring remand for a
revaluation of the plaintiff's equitable claim. On remand, the

REFERENCES

Am Jur 2d, Divorce and Separation §§ 898, 943.
Spouse's professional degree or license as marital property for
    purposes of alimony, support, or property settlement. 4 ALR4th
    1294.

trial court may order that any award to the plaintiff be payable in monthly installments, subject to interest computed in accordance with *Thomas v Thomas (On Remand)*, 176 Mich App 90 (1989).

4. The remainder of the trial court's property distribution was proper.

Affirmed in part and remanded.

1. DIVORCE — PROPERTY DIVISION — POSTGRADUATE DEGREES.

A postgraduate degree obtained by one spouse during the marriage as the end product of a concerted family effort involving mutual sacrifice and effort gives rise, upon divorce, to a divisible marital asset, subject to an equitable claim by the other spouse for compensation for unrewarded sacrifices, efforts, and contributions toward attainment of the degree.

2. DIVORCE — PROPERTY DIVISION — POSTGRADUATE DEGREES.

The valuation of an equitable claim by one spouse in a divorce action to a postgraduate degree earned by the other spouse during the marriage involves an examination of the facts of the case, including sacrifices, efforts, and contributions of the claimant toward attainment of the degree, and a determination of the most equitable remedy or means of compensating the claimant.

*Miller, Johnson, Snell & Cummiskey* (by *Edward R. Post*), for the plaintiff.

*Gruel, Mills, Nims & Pylman* (by *Grant J. Gruel*), for the defendant.

Before: MAHER, P.J., and SULLIVAN and REILLY, JJ.

MAHER, P.J. The defendant appeals and the plaintiff cross appeals from the property distribution provisions of a February 3, 1989, judgment of divorce. The primary issue concerns the valuation of defendant's law degree and whether the trial court erred in finding the law degree to be a marital asset. We affirm in part and remand.

Plaintiff and defendant were married on August 11, 1984. At the time of their marriage, defendant

was employed as a cost accountant and plaintiff was working as a licensed practical nurse and attending school in pursuit of an associate's degree in nursing so that she could become a registered nurse. It was the plan of the parties when they married that defendant would enroll in law school and that plaintiff would postpone her schooling and work full-time to support them while defendant attended school. Accordingly, shortly after the marriage, the parties moved from Grand Rapids to the Detroit area, where they stayed from September 1984 until May 1987 while defendant attended Wayne State University Law School. In furtherance of the parties' plan, plaintiff obtained a full-time job at an area hospital, earning approximately $53,000 during the period defendant was in law school. Plaintiff also assumed the primary responsibility of maintaining the household, doing all cooking and cleaning, and running all errands. Though defendant did not work at all during his first year in law school, he later worked as a law clerk, full-time during the summers following his first and second years in law school and then part-time during his second and part of his third years. In all, defendant earned approximately $12,000 from clerking. The parties' earnings were used primarily for their support, while defendant's education was financed mostly through student loans totaling $15,000.

Defendant proved to be a successful law student and wrote for the school's law review. After defendant graduated in May 1987, the parties moved back to the Grand Rapids area, where defendant accepted a position as an associate attorney with a local law firm at a starting annual salary of $41,000. The following September, plaintiff resumed classes in pursuit of her associate's degree in nursing. In November 1987, however, the parties

separated. Despite the separation, plaintiff continued her classes and eventually received her associate's degree in May 1988, although she had to support herself during that period by working full-time at a local hospital.

Plaintiff testified that marital problems developed early in the marriage. She said defendant would often complain that she was overweight, saying it embarrassed him, and that he would start many verbal fights, usually over things that were insignificant. She claimed the situation got to the point where her whole life revolved around trying not to agitate defendant. Defendant testified that he often asked plaintiff to leave, complained that she was a "fanatic" about cleaning, and admitted that he once presented her with a list of things for her to remember to do so that she wouldn't "irritate" him. Although defendant agreed that he was sometimes difficult to live with and that he treated plaintiff badly from time to time, he blamed it on the stress of law school. According to plaintiff, defendant would often apologize the day after a fight, sometimes verbally and sometimes in a letter. The parties finally separated on November 7, 1987, after defendant informed plaintiff that he had met another woman and had gone out with her a couple of times while plaintiff was working.

The trial court found that the breakdown of the marriage was primarily the fault of defendant, and announced it had considered this fact in its property distribution. After awarding each of the parties their respective automobiles, the trial court awarded plaintiff specific household goods and bank funds totaling $5,000, while awarding defendant specific goods and funds totaling $3,000. Defendant was also held solely responsible for repayment of $14,000 in student loans. Finally, the trial

court determined that defendant's law degree was a marital asset subject to distribution. The court valued the degree at $80,000, and awarded plaintiff, as her share of the degree, $32,000 on the basis that this amount would equalize the parties' respective distributive shares. The court ordered this obligation to be paid off in monthly installments of $371.55 or more, at seven percent interest, until fully paid. The court did not award either party alimony.

Defendant now appeals and plaintiff cross appeals as of right. The issues raised on appeal involve the Supreme Court's recent Administrative Order No. 1990-6, 436 Mich xxxi, dated October 5, 1990, governing the resolution of conflicts in the Court of Appeals. Specifically, defendant challenges various aspects of the trial court's property distribution, with his primary objection being the court's inclusion of his law degree in the marital estate and the resultant valuation of that degree. On cross appeal, plaintiff also challenges the trial court's valuation of the law degree, contending that it was low.

The goal of a trial court with respect to the division of the marital estate is a fair and equitable distribution under all of the circumstances. *Greaves v Greaves,* 148 Mich App 643, 647; 384 NW2d 830 (1986). The division is not governed by any rigid rules or mathematical formula and need not be equal. *McLain v McLain,* 108 Mich App 166, 169; 310 NW2d 316 (1981). The primary question is what is fair. *Id.* On review, this Court is required to accept the trial court's factual findings unless those findings are clearly erroneous. *Beason v Beason,* 435 Mich 791, 803; 460 NW2d 207 (1990); *Beckett v Beckett,* 186 Mich App 151, 153; 463 NW2d 211 (1990).

### I. THE LAW DEGREE

Panels of this Court have expressed different views concerning the treatment, characterization, and valuation of an advanced degree in a divorce situation. Nevertheless, most panels have agreed that *fairness* dictates that a spouse who did not earn an advanced degree be compensated whenever the advanced degree is the end product of a *concerted family effort* involving mutual sacrifice and effort by both spouses. *Beckett, supra,* p 155; *Lewis v Lewis,* 181 Mich App 1, 6; 448 NW2d 735 (1989); *Wiand v Wiand,* 178 Mich App 137, 150-151; 443 NW2d 464 (1989); *Wilkins v Wilkins,* 149 Mich App 779, 789; 386 NW2d 677 (1986); *Watling v Watling,* 127 Mich App 624, 626; 339 NW2d 505 (1983); *Woodworth v Woodworth,* 126 Mich App 258, 261; 337 NW2d 332 (1983). Also see *Olah v Olah,* 135 Mich App 404, 410; 354 NW2d 359 (1984).

In addressing the issue involving defendant's law degree, we will begin by first discussing the rationale behind the recognition that a nonstudent spouse must be compensated whenever a concerted family effort is involved in obtaining an advanced degree, which discussion will include an application of the concept "concerted family effort" to the facts of the instant case. Secondly, we will discuss what we believe to be the appropriate and preferable means of characterizing a claim for compensation involving an advanced degree. Finally, we will address the factors and methods that we believe are relevant in valuing such a claim upon divorce.

#### A. THE CONCERTED FAMILY EFFORT.

As indicated above, an award of compensation to a nonstudent spouse is premised upon both general

notions of "fairness" and the existence of a "concerted family effort." The relevancy of fairness is that, in Michigan, equitable considerations form the underlying basis for recognizing a claim for compensation involving an advanced degree, and that the ultimate goal in every divorce case is to do what is necessary to accord complete equity under the facts and circumstances of the case. See *Wiand, supra,* p 144; *Cohen v Cohen,* 125 Mich App 206, 211; 335 NW2d 661 (1983).

Second, the concept "concerted family effort" stresses the fact that it is not the existence of an advanced degree itself that gives rise to an equitable claim for compensation, but rather the fact of the degree being the end product of the mutual sacrifice, effort, and contribution of both parties as part of a larger, long-range plan intended to benefit the family as a whole. The concept is premised, in part, on the fact that the attainment of an advanced degree is a prolonged undertaking involving considerable expenditure of time, effort, and money, as well as other sacrifices. Where such an undertaking is pursued as part of a concerted family effort, both spouses expect to be compensated for their respective sacrifices, efforts, and contributions by eventually sharing in the fruits of the degree. Where, however, the parties' relationship ends in divorce, such a sharing is impossible. Although the degree holder will always have the degree to show for the efforts, the nonstudent spouse is left with nothing. Therefore, a remedy consistent with fairness and equity requires that an attempt be made to at least return financially to the nonstudent spouse the value of what that spouse contributed toward attainment of the degree.

Generally, the existence of a concerted family effort will be reflected in many ways. For instance,

it is reflected not only through a spouse's tangible efforts and financial contributions associated with working and supporting the mate while the mate pursues the advanced degree, *Olah, supra,* p 410, but also through other intangible, nonpecuniary efforts and contributions, such as where a spouse increases the share of the daily tasks, child-rearing responsibilities, or other details of household and family management undertaken in order to provide the mate with the necessary time and energy to study and attend classes. *Lewis, supra,* p 7; *Woodworth, supra,* p 261; *Thomas v Thomas (After Remand),* 164 Mich App 618, 623-624; 417 NW2d 563 (1987). A concerted family effort is also exemplified by the fact that both spouses typically share in the emotional and psychological burdens of the educational experience. For the nonstudent spouse, these burdens may be experienced either directly, such as through the presence of increased tension within the household, or indirectly, such as where the spouse shares vicariously in the stress of the educational experience. *Woodworth, supra,* p 261. Finally, the attainment of an advanced degree during marriage is usually accompanied by considerable sacrifice on the part of both spouses. For the nonstudent spouse, such sacrifice may be reflected by a change in life style during the educational process, the availability of less time to pursue personal interests, or even a decision to either give up or temporarily postpone one's own educational or career pursuits as part of the larger, long-range plan designed to benefit the family as a whole. *Lewis, supra,* p 7; *Krause v Krause,* 177 Mich App 184, 197-198; 441 NW2d 66 (1989); *Daniels v Daniels,* 165 Mich App 726, 731; 418 NW2d 924 (1988).

Turning now to the instant case, the facts show that plaintiff temporarily postponed her pursuit of

an associate's degree in nursing, moved with de-
fendant to the Detroit area so that he could attend
law school, and then worked full-time to support
herself and defendant while defendant attended
classes. This was all done as part of a larger plan
to benefit both parties as a whole. Plaintiff, in
addition to being the primary financial provider
while defendant attended school, wherein she ac-
counted for approximately eighty percent of the
parties' total financial support, also bore primary
responsibility for the daily household tasks. More-
over, the stress of the law school experience was
certainly experienced by both parties, as reflected
by the fact that defendant repeatedly blamed his
inappropriate behavior toward plaintiff on the
stress of law school, and by plaintiff's testimony
explaining that her whole life revolved around her
trying not to agitate defendant.

We conclude, therefore, that defendant's law
degree was clearly the end product of a concerted
family effort giving rise to an equitable claim for
compensation in favor of plaintiff in recognition of
her unrewarded sacrifices, efforts, and contribu-
tions toward attainment of the degree.

### B. CHARACTERIZATION OF A CLAIM FOR COMPENSATION INVOLVING AN ADVANCED DEGREE.

Despite the common recognition among panels
of this Court that a spouse who did not obtain an
advanced degree should be compensated whenever
the degree is the end product of a concerted family
effort, panels are in disagreement over the appro-
priate manner in which a claim for compensation
should be considered. While some panels have
characterized an advanced degree as a marital
asset subject to property division, *Thomas v
Thomas,* 131 Mich App 830, 831-832; 346 NW2d

595 (1984), rev'd in part on other grounds 419 Mich 942 (1984); *Woodworth, supra,* other panels have held that an advanced degree is more properly considered as a factor in awarding alimony. *Krause, supra,* p 190; *Olah, supra,* pp 410-411. Also see *Wilkins, supra.*

After reviewing the various decisions addressing the issue and taking into consideration the underlying principles upon which an award of compensation for an advanced degree is premised, we reject the view holding that an advanced degree is more properly considered as a factor in awarding alimony.

The cases adhering to the alimony view, *Krause, supra,* and *Olah, supra,* have stated that a degree is simply not "property" for the reasons expressed in *Graham v Graham,* 194 Colo 429, 432; 574 P2d 75 (1978):

> An educational degree such as an M.B.A., is simply not encompassed even by the broad views of the concept of "property." It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term.

In rejecting the alimony approach, we first recognize that the basic purpose of paying alimony is to assist in the other spouse's support. *Lewis, supra,* p 6; *Johnson v Johnson,* 346 Mich 418, 428;

78 NW2d 216 (1956).[1] Unlike alimony, however, the principles underlying an award of compensation based on the attainment of an advanced degree are neither rooted in nor based on notions of support. Rather, as noted previously, entitlement to compensation stems from the recognition that where a degree is the end product of a concerted family effort, fairness and equity will not permit the degree holder to reap the benefits of the degree without compensating the other spouse for unrewarded sacrifices, efforts, and contributions toward attainment of the degree. Thus, where a concerted family effort is involved, a spouse's entitlement to compensation constitutes a recognized right; it is not dependent upon factors related to the need for support. Therefore, we do not find that an award of alimony is the appropriate means for awarding compensation.

Moreover, as pointed out in both *Woodworth, supra,* pp 267-268, and my concurring opinion in *Olah, supra,* p 414, an award in terms of alimony may unfairly jeopardize a spouse's recognized right to compensation because a trial court has broad discretion in deciding whether to grant alimony, *Westrate v Westrate,* 50 Mich App 673; 213 NW2d 860 (1973), because an award of alimony is dependent on factors[2] different from those related to the division of marital property, and because, pursuant to MCL 552.13; MSA 25.93, alimony may be terminated if the spouse receiving it remarries. Regarding this latter observation, we agree with the panel in *Lewis, supra,* p 6, which stated:

[1] According to Black's Law Dictionary (4th ed), the word "alimony" derives from "alimonia," meaning sustenance in Latin, and means, therefore, the sustenance or support of the wife by her divorced husband and stems from the common-law right of the wife to support by her husband.

[2] See *Cloyd v Cloyd,* 165 Mich App 755, 759; 419 NW2d 455 (1988), for an outline of the factors to be considered in awarding alimony.

"Because the value of an advanced degree does not 'evaporate' upon the nondegree-earning spouse's remarriage, we do not find an award of alimony a satisfactory method of recognizing that spouse's efforts toward earning the degree." Furthermore, we note that it is often the case that a nonstudent spouse will already have demonstrated the ability of self-support by virtue of having supported the degree-earning spouse through graduate school. While such fact would ordinarily militate against an award of alimony, we do not believe it should operate to deprive the nonstudent spouse of a recognized right to be compensated for unrewarded sacrifices, efforts, and contributions toward attainment of the degree.

Finally, contrary to the observations in *Graham, supra,* we do not believe that the consideration of an advanced degree when making the property distribution would be improper merely because a degree cannot be characterized as "property" in the classic sense. Rather, we agree with *Woodworth, supra,* p 263, that "whether or not an advanced degree can physically or metaphysically be defined as 'property' is beside the point[;] [c]ourts must instead focus on the most equitable solution to dissolving the marriage and dividing among the respective parties what they have." Furthermore, as I stated in my concurring opinion in *Olah, supra,* p 412: "This is an equitable distribution jurisdiction, in which classification of an item as either property or non-property is not decisive in determining the best division of the parties' holdings on divorce." Finally, in *Lewis, supra,* p 6, this Court added: "[T]he fundamental question in cases involving advanced degrees is not whether a degree is property, but rather 'whether the facts in the case give rise to an *equitable claim* regarding the degree so that a property division

can be considered fair and equitable between the parties.' " [Emphasis added.]

We conclude, therefore, that where an advanced degree is the end product of a concerted family effort, involving the mutual sacrifice, effort, and contribution of both spouses, there arises a "marital asset" subject to distribution, wherein the interest of the nonstudent spouse consists of an "equitable claim" regarding the degree.

### C. VALUATION.

Having found that a marital asset giving rise to an "equitable claim" subject to distribution exists where an advanced degree is the end product of a concerted family effort, we will now discuss the appropriate factors and considerations relative to an evaluation of such a claim for purposes of distributing property.

*Woodworth, supra,* pp 268-269, discussed two methods of compensating a nonstudent spouse for an interest in an advanced degree: (1) awarding a percentage share of the present value of the future earnings attributable to the degree, or (2) restitution. The first method focuses on the degree's present value by attempting to estimate what the person holding the degree is likely to make in a particular job market and subtracting therefrom what that person would probably have earned without the degree. *Id.* According to *Woodworth,* the nonstudent spouse should then be awarded a percentage share of this value after considering (1) the length of the marriage after the degree was obtained, (2) the sources and extent of financial support given to the degree holder during the years in school, and (3) the overall division of the parties' marital property. *Id.* The second method is less involved, because it focuses on the cost of obtaining the degree. *Id.*

In this case, plaintiff presented an expert who, using the present value method discussed in *Woodworth,* valued defendant's law degree at $230,000. Although defendant did not present his own expert, he took exception to several of the underlying assumptions employed by plaintiff's expert in his valuation of the degree.[3] Using essentially the same formula, but with modifications to the underlying assumptions, defendant presented his own valuations of $15,000, $46,000, and $79,500. The trial court ultimately valued defendant's law degree at $80,000, and then, after determining that the remainder of the property distribution resulted in plaintiff receiving a net amount of $5,000, but defendant having a deficit of $11,000, awarded plaintiff $32,000 as her share of the degree, noting that such an award would equalize the parties' respective distributive shares.

It is difficult to tell from the record how the trial court arrived at its initial $80,000 valuation figure. Further, while we certainly agree that plaintiff is entitled to be compensated for her unrewarded sacrifices, efforts, and contributions toward the attainment of defendant's law degree, our review of the record reveals that the trial court's ultimate award of $32,000 failed to account for several relevant and applicable considerations. Accordingly, we conclude that the appropriate remedy in this case is to remand to the trial court for revaluation of plaintiff's "equitable claim" in light of this opinion. On remand, we do not believe that the present value method discussed in *Woodworth,* and purportedly used by plaintiff's expert, is an appropriate means by which to evaluate plaintiff's equi-

[3] These underlying assumptions concern annual salary figures, promotions, tax rates, and calculations designed to account for the fact that, over time, earnings are attributable more to the individual degree holder's personal skills and effort, rather than to the degree itself.

table claim involving the degree. Such a method emphasizes the notion that a nonstudent spouse possesses some sort of pecuniary interest in the degree itself. We believe such a notion misconstrues the underlying premise upon which an award of compensation involving an advanced degree is based. As we have attempted to explain throughout this opinion, an award of compensation is premised upon equitable considerations, wherein the goal is to attempt to financially return to the nonstudent spouse what that spouse contributed toward attainment of the degree. Because such an award is not premised upon the notion that a nonstudent spouse possesses an interest in the degree itself, we do not believe the actual value of the degree is a relevant consideration. In this respect, we agree with the following observations made in *Krause, supra,* pp 197-198:[4]

> [W]e believe that defendant is not entitled to any award specifically designed to compensate her for a portion of the 'value' of plaintiff's degree. Rather, we believe that the trial court may consider defendant's assistance to plaintiff in determining an appropriate award . . . .
>
> * * *
>
> [T]he trial court must keep in mind that it is compensating defendant for her assistance to plaintiff while he pursued his degree. Thus, the so-called 'value' of the degree or plaintiff's potential income to be earned from having the degree is irrelevant to the analysis. The trial court must focus solely on what is necessary to compensate defendant for the burdens on her or the sacrifices made by her so that plaintiff could pursue his degree.

---

[4] Although *Krause* supports the alimony approach with respect to treatment of an advanced degree, a view we reject in this opinion, we believe its analysis relative to the appropriate considerations for evaluating such a claim are just as applicable in the context of a property distribution analysis.

Among the arguments advanced by defendant in support of his contention that an advanced degree should not be considered when dividing the marital estate are: (1) that marriage is not a commercial venture, (2) that the value of an advanced degree cannot be ascertained with reasonable certainty, and (3) that consideration of a degree as part of the property division would be akin to involuntary servitude. Inherent in each of these arguments, however, is the notion that a nonstudent spouse possesses some type of pecuniary interest in a degree or is entitled to be compensated for a portion of the so-called "value" of the degree, views we specifically reject. Again, we emphasize that the focus of an award involving an advanced degree is not to reimburse the nonstudent spouse for "loss of expectations" over what the degree might potentially have produced, but to reimburse that spouse for unrewarded sacrifices, efforts, and contributions toward attainment of the degree on the ground that it would be equitable to do so *in view of the fact* that that spouse will not be sharing in the fruits of the degree.

This Court, in *Krause, supra,* pp 194-197, quoted at length from a portion of an opinion by the Appellate Division of the Superior Court of New Jersey in *Mahoney v Mahoney,* 182 NJ Super 598; 442 A2d 1062 (1982). Among the observations expressed therein, and with which we find ourselves in agreement, are:

> The termination of the marriage represents, if nothing else, the disappointment of expectations, financial and nonfinancial, which were hoped to be achieved by and during the continuation of the relationship. It does not, however, in our view, represent a commercial investment loss. Recompense for the disappointed expectations resulting from the failure of the marital entity to survive

cannot, therefore, be made to the spouses on a strictly commercial basis . . . .

\* \* \*

If the plan fails by reason of the termination of the marriage, we do not regard the supporting spouse's consequent loss of expectations by itself as any more compensable or demanding of solicitude than the loss of expectations of any other spouse who, in the hope and anticipation of the endurance of the relationship and its commitments, has invested a portion of his or her life, youth, energy and labor in a failed marriage. [*Krause, supra,* pp 195-196.]

In our view, any valuation of a nonstudent spouse's equitable claim involving an advanced degree involves a two-step analysis. First, an examination of the sacrifices, efforts, and contributions of the nonstudent spouse toward attainment of the degree. Second, given such sacrifices, efforts, and contributions, a determination of what remedy or means of compensation would most equitably compensate the nonstudent spouse under the facts of the case. *Woodworth, supra,* p 263; *Watling, supra,* p 627. In this regard, we agree with *Woodworth* that the length of the marriage after the degree was obtained, the sources and extent of financial support given to the degree holder during the years in school, and the overall division of the parties' marital property are all relevant considerations in valuing a nonstudent spouse's equitable claim involving an advanced degree upon divorce.

Where, for instance, the parties remain married for a substantial period of time after an advanced degree is obtained, fairness suggests that the value of an equitable claim would not be as great, inasmuch as the nonstudent spouse will already have been rewarded, in part, for efforts contributed by virtue of having already shared, in part, in the

fruits of the degree. See *Watling, supra,* p 627. Similarly, where the extent of support or assistance provided by the nonstudent spouse, financial or otherwise, is not significant, or where such assistance comes primarily from outside sources for which the nonstudent spouse was not responsible or is not liable, fairness and equity would also suggest that the value of an equitable claim would not be as great.

Furthermore, an equitable remedy may be exemplified in different ways. For example, as this Court recognized in *Krause, supra,* pp 197-198: "[I]f [the nonstudent spouse] wishes to pursue [an] education or take other similar steps to improve . . . employability or income earning potential, it is reasonable and equitable to require the [degree-holding spouse] to assist . . . in those endeavors." Thus, in this type of situation, an award consistent with fairness and equity would be one which requires the degree-earning spouse to provide assistance, in the form of financial support, equivalent to that provided by the nonstudent spouse during the marriage.

Where, however, a nonstudent spouse does not wish to further pursue an education, then perhaps equity would best be served by an award reimbursing the spouse for the amount of financial assistance provided toward attainment of the degree, while also recognizing the other intangible, nonpecuniary sacrifices made and efforts expended.

Ultimately, however, the goal is to arrive at a remedy which, consistent with fairness and equity, will compensate the nonstudent spouse for unrewarded sacrifices, efforts, and contributions toward the degree. Thus, in reviewing such a claim on appeal, the ultimate inquiry is whether the remedy or decision of the trial court was a fair and equitable one under the facts of the case, given the

sacrifices, efforts, and contributions of the nonstudent spouse toward the degree.

We note in this case that the parties separated shortly after defendant attained his law degree. Thus, plaintiff received little reward, if any, for her sacrifices, efforts, and contributions toward defendant's degree. Further, while defendant did contribute some financial support during the degree-earning period, it was plaintiff who accounted for the vast majority of it, approximately eighty percent. Moreover, while defendant certainly worked hard in obtaining his degree, it is abundantly clear from the record that plaintiff's nonpecuniary efforts and contributions toward the degree were indeed significant also, and that she certainly endured many hardships and sacrifices as a result of her participation in the law school experience. We also note that while plaintiff did ultimately further her own career objectives in the manner she chose, she was required to do so on her own and did not have nearly the same benefits, financial or otherwise, that defendant had while he attended school. Defendant was, however, primarily responsible for the actual cost of his education, which was financed mostly through student loans for which he remains solely responsible. These are just some of the factors which were not discussed by the trial court, but yet are relevant to the valuation of plaintiff's equitable claim involving the degree. Therefore, these factors shall be considered by the trial court on remand.

After valuing plaintiff's equitable claim, the trial court may order that the amount determined to be due be payable in monthly installments over a fixed period of time. Furthermore, interest shall be computed in accordance with *Thomas v Thomas (On Remand)*, 176 Mich App 90; 439 NW2d 270

(1989). Finally, we believe it would be in order to allow the parties the opportunity to present new evidence on the issue of valuation in light of this opinion.

### II. DEFENDANT'S REMAINING ISSUES ON APPEAL.

First, in light of our conclusion that an advanced degree is to be considered in making a property distribution, we find it unnecessary to review defendant's claim that plaintiff is not entitled to an award of alimony, given that such an award was not made by the trial court, and that such decision has not been challenged by plaintiff.

Next, defendant argues that the trial court erred in failing to consider plaintiff's nursing degree as part of the marital estate. We disagree. The record discloses that plaintiff pursued this degree before the parties were married and after the parties separated. Further, such a degree is not an advanced degree. See *Sullivan v Sullivan,* 175 Mich App 508, 512; 438 NW2d 309 (1989). However, to the extent that plaintiff used marital funds to pursue this degree, as the record suggests, we believe such fact may properly be considered as a factor in the valuation of plaintiff's equitable claim involving defendant's law degree. See *Watling, supra.*

Defendant also challenges the trial court's decision regarding the parties' automobiles. The trial court awarded plaintiff her 1985 Mazda and defendant his 1984 Fiero. The court considered the source of the funds used to purchase the vehicles, noting that plaintiff's vehicle was paid for in part by a $5,000 gift from plaintiff's father, along with the debt remaining on the vehicles. The court concluded that an award of each vehicle to the

respective driver amounted to a "wash" for property distribution purposes. After reviewing the record, we believe this decision was a fair and equitable one. Moreover, we find no clear error in the trial court's finding that such a result amounted to a "wash" for property distribution purposes.

Nor do we find any error in the trial court's decision to exclude plaintiff's $10,000 certificate of deposit from the marital estate, because the certificate of deposit was acquired by plaintiff prior to the marriage and was held jointly by her and her grandfather. See *Grotelueschen v Grotelueschen,* 113 Mich App 395; 318 NW2d 227 (1982).

Finally, defendant argues that the trial court "neglected several other tangible assets when dividing the marital estate." We disagree. The items defendant mentions are miscellaneous furnishings and household items which were not the subject of specific testimony at trial. In distributing the marital estate, the trial court mentioned only the "major" items, indicating that those items not specifically mentioned would be awarded to the party in possession. On the basis of a thorough review of the record, we find no reason to disturb this decision.

Accordingly, the remainder of the trial court's property distribution is affirmed.

Affirmed in part and remanded for proceedings consistent with this opinion regarding the valuation of plaintiff's equitable claim involving defendant's law degree. We do not retain jurisdiction.